IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**EDDIE SAUCIER, # 32260**                                          **PETITIONER**

**V.**                                                            **CASE NO. 1:14cv138-LG-JCG**

**EYDIE WINKEL**                                                      **RESPONDENT**

## REPORT AND RECOMMENDATIONS

Petitioner Eddie Saucier filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 on March 21, 2014. [1]. On May 27, 2014, Respondent Eydie Winkel filed a motion to dismiss the petition as untimely. [9]. Having considered the facts and applicable law, the undersigned issues this report and recommendations that the motion be granted and that the petition be dismissed pursuant to 28 U.S.C. § 2244(d).

## Facts

Eddie Saucier was convicted of murder and sentenced to life without parole as an habitual offender in the Circuit Court of Harrison County, Mississippi. On February 27, 2007, the conviction and sentence were affirmed by the Mississippi Court of Appeals in a decision stating, in pertinent part, that:

> At Saucier's trial, the most damaging testimony offered against him was that of Gregory Clayton. Clayton and Saucier had been cellmates following Saucier's arrest, and Clayton testified to discussing Wilson's murder with Saucier. Clayton testified that Saucier admitted that he had broken into Wilson's apartment. Clayton's testimony further provided that Saucier intended only to steal Wilson's money so that he could purchase drugs, but when Wilson awoke, Saucier stabbed him with a screwdriver and smothered him with a pillow. Wilson's autopsy confirmed that Wilson died as a result of blood from his stab wounds seeping into his lungs and causing him to suffocate. Saucier told Clayton that after killing Wilson, he went into the other bedroom, pried open the safe with a pair of snips and a hammer, and took $8,500. Clayton's testimony went unrebutted and the record indicates, that in exchange for his testimony, Clayton did not receive any promise of a reduction in the mandatory sentence he was already serving on a robbery conviction.[1]

---

[1] *Saucier v. State,* 950 So. 2d 262, 264-65 (Miss. Ct. App. 2007).

Saucier did not file a motion for rehearing in the Mississippi Court of Appeals. Nor did Saucier file a petition for writ of certiorari in the United States Supreme Court.

On March 29, 2012, Saucier signed a petition for post-conviction relief, which was subsequently filed in the Mississippi Supreme Court on April 3, 2012.[2] [9-3]. That petition was denied by the Mississippi Supreme Court on May 17, 2012. [9-4]. Saucier then filed a motion for reconsideration in the Mississippi Supreme Court, which was denied on July 5, 2012. [9-5].

On March 13, 2014, Saucier signed his petition for federal habeas corpus relief. [1, p.15]. The petition challenges the validity of Saucier's state court murder conviction based on "new evidence" concerning the credibility of Gregory Clayton. *Id*. The petition identifies two witnesses (Billy R. Ford, Jr. and Jonny Woodland) expected to testify that Gregory Clayton had a drug problem. [1]. Saucier contends such impeachment evidence should have been used to undermine the credibility of Gregory Clayton at trial, and that the failure to do so resulted in an unconstitutional murder conviction. *Id*.

## Analysis

**I. The petition is untimely pursuant to 28 U.S.C. § 2244(d)(1).**

Respondent correctly argues that a state prisoner seeking federal habeas corpus relief must file a petition before the expiration of the one-year statute of limitations set forth in § 2244(d). The statute states, in pertinent part, that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --

---

[2] *Watts v. Brewer*, 416 Fed.Appx. 425, 426-27 (5th Cir. 2011) ("According to the prison mailbox rule however, 'a pro se prisoner's habeas petition is filed, for purposes of determining the applicability of ... AEDPA, when he delivers the papers to prison authorities for mailing.'") (quoting *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998)).

      (A)  the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review; [or]

                          \*      \*      \*

      (D)  the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

  (2)  The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

Under subsection (d)(1)(A), the "one-year period begins to run from the date on which the state court judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." *Mark v. Thaler*, 646 F.3d 191 (5th Cir. 2011) (internal citations and quotations omitted). A state court conviction is "final" when there is no further "'availability of direct appeal to the state courts." *Id*.

In Mississippi, there is no "availability of direct appeal" of a decision by the intermediate appellate court unless the petitioner files a motion for rehearing.[3] The motion for rehearing, however, must be filed within fourteen (14) days after the intermediate appellate court renders its decision.[4]  Here, Saucier did not file a motion for rehearing within fourteen (14) days of the February 27, 2007 decision rendered by the intermediate appellate court. Respondent thus correctly argues that Saucier's state court murder conviction became "final" under subsection (d)(1)(A) on March 13, 2007.

Saucier, meanwhile, incorrectly argues that subsection (d)(1)(D) should determine when the one-year limitations period began to run. [10]. The "factual predicate" that

---

[3] Miss. R. App. P. 17(b) ("A party seeking review of a judgment of the Court of Appeals must first seek review of that court's decision by filing a motion for rehearing in the Court of Appeals.").

[4] Miss. R. App. P. 40(a) ("A motion for rehearing may be filed within 14 days after a decision is handed down on the merits of a case by the Supreme Court or the Court of Appeals.").

Saucier relies on consists of testimony from two witnesses that Gregory Clayton had a drug problem. [1]. This argument is without merit because the issue of Clayton's credibility was affirmatively raised by Saucier on direct appeal to the intermediate appellate court:

> Saucier contends that the prosecution's case was based entirely on the following evidence: (1) that he had a significant amount of cash in his possession in the days following Wilson's murder, (2) that his DNA was found on a bucket near Wilson's safe, and (3) that the testimony of Gregory Clayton, a convicted felon, sought favor from the State.
>
>       *  *  *
>
> Finally, Saucier attacks Clayton's credibility stating that Clayton is "a criminal and a liar," and asserts that when Clayton was arrested on the robbery charge, for which he is now serving time, he gave the police an alias. Further, Saucier argues that Clayton left out significant details about how the crime was committed and that any knowledge Clayton had about Wilson's murder came from reading the trial transcript, not from any conversation between Saucier and Clayton.

*Saucier,* 950 So. 2d at 265-66.

The same "factual predicate" for Saucier's current habeas corpus claims was raised on direct appeal and therefore was apparent when his state court conviction became "final" on March 13, 2007. Such circumstances preclude the use of subsection (d)(1)(D) to determine the start of the one-year limitations period because Saucier did not act with the requisite "due diligence" required by the Fifth Circuit :

> Finally, we reject Manning's argument that his application was timely pursuant to § 2244(d)(1)(D). … The factual predicates for both of the claims for which the district court granted a COA were apparent when his judgment became final. Manning had already raised his ineffective assistance of counsel claims on direct review, and the factual predicates of his Batson claim were evident during his state court trial proceeding. He needed no additional time to uncover the factual predicates for these claims. Manning's argument would require us to hold that a petitioner's statute of limitations does not begin to run on any of his claims until he has discovered every conceivable claim for federal habeas corpus relief. He cites no support for this untenable theory.

*Manning v. Epps*, 688 F.3d 177, 189-90 (5th Cir. 2012).

## II. The statutory tolling provision under § 2244(d)(2) is inapplicable.

Saucier also incorrectly argues that the limitations period should be tolled pursuant to subsection (d)(2) because of his *pro se* post-conviction proceeding that was commenced in the Mississippi Supreme Court. [10]. This argument is without merit because the tolling provision in subsection (d)(2) only applies if an application for post-conviction relief was "properly filed" in the state court *before* the expiration of the one-year limitations period under subsection (d)(1).

In this case, for example, the state court murder conviction became "final" on March 13, 2007. The tolling provision in subsection (d)(2) would only apply if an application for post-conviction relief was "properly filed" by Saucier in state court by March 14, 2008. Saucier, however, did not file a motion for post-conviction relief until March 29, 2012 – or roughly forty eight (48) months *after* the limitations deadline lapsed on March 14, 2008. The Fifth Circuit holds that subsection (d)(2) does not toll the one-year limitations period under these circumstances. *See Richards v. Thaler*, 710 F.3d 573, 576 (5th Cir. 2013) ("Where the applicant files his or her state post-conviction petition after the time for filing a § 2254 application has lapsed, the state petition does not operate to toll the one-year limitations period.").[5]

## III. The equitable tolling doctrine is also inapplicable.

"The doctrine of equitable tolling preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." *Alexander v. Cockrell*, 294 F.3d 626, 629 (5th Cir. 2002). "To be entitled to equitable tolling, a petitioner has the

---

[5] *See also Brown v. Thaler*, 455 Fed.Appx. 401, 405 (5th Cir. 2011) ("Because Brown received an extension to file a PDR, the time in which he could no longer seek further direct review expired on March 16, 2007. Accordingly, his one-year deadline to file a federal habeas petition was March 17, 2008. Because he did *not* file for state post-conviction review of the robbery conviction until after that date, there is *no* statutory tolling. His federal petition, dated February 6, 2009, is thus barred by the AEDPA statute of limitations.") (emphasis added).

burden of showing (1) that he had been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Clarke v. Rader*, 721 F.3d 339, 345 (5th Cir. 2013) (internal citations and quotations omitted). "Courts must consider the individual facts and circumstances of each case in determining whether equitable tolling is appropriate." *Cockrell*, 294 F.3d at 629.

Equitable tolling is inapplicable in this case because (i) the instant petition was filed roughly four (4) years *after* the limitations deadline lapsed on March 14, 2008, and (ii) Saucier had knowledge of the issue that he seeks to raise *before* his underlying state court murder conviction became final on March 13, 2007. The equitable tolling doctrine appears inapplicable under these circumstances because Saucier did not "diligently" pursue habeas relief in accordance with controlling Fifth Circuit law:

> The doctrine of equitable tolling is applied restrictively and, as we have held repeatedly, is entertained only in cases presenting rare and exceptional circumstances where it is necessary to preserve a plaintiff's claims when strict application of the statute of limitations would be inequitable. Here, Johnson has provided no reason for missing the deadline by years, much less a rare and exceptional one. As this Court has long stated, equity is not intended for those who sleep on their rights.

*In re Johnson*, 325 Fed.Appx. 337, 341 (5th Cir. 2009) (internal citations omitted).[6]

Saucier's remaining arguments are also insufficient to invoke the equitable tolling doctrine in this case. A petitioner's status as a *pro se* prisoner with little knowledge of the law does not warrant equitable tolling in the Fifth Circuit. *See United States v. Petty*, 530 F.3d 361, 365-66 (5th Cir. 2008) ("Petty contends his status as a *pro se* litigant relieves him

---

[6] S*ee also Triplett v. King*, 250 Fed.Appx. 107, 109 (5th Cir. 2007) ("Furthermore, as the district court noted, the equitable tolling doctrine should be applied only if the petitioner "diligently pursues" habeas relief. We find that Triplett did not diligently pursue habeas relief because he did not file his § 2254 petition until June 2, 2005, which was approximately 558 days after the limitations period expired. The evidence indicates that Triplett waited an impermissible amount of time to file his § 2254 petition after learning of his counsel's failure to do so.").

of possessing detailed knowledge of the procedural nuances of § 2255 motions. Proceeding *pro se* is alone insufficient to equitably toll the AEDPA statute of limitations. Further, the lack of legal training, ignorance of the law, and unfamiliarity with the legal process are insufficient reasons to equitably toll the AEDPA statute of limitations. Petty was required to follow the applicable procedural rules governing AEDPA motions.") (internal citations and quotations omitted).

Likewise, Saucier's allegations of ineffective trial counsel do not warrant equitably tolling the one-year limitations period, which in this case expired forty eight (48) months before Saucier first sought post-conviction relief in state court. *Manning v. Epps*, 688 F.3d 177, 185 (5th Cir. 2012) ("In fact, our precedent instructs that petitioners seeking to establish due diligence must exercise diligence even when they receive inadequate legal representation. Our cases hold that ineffective assistance of counsel is irrelevant to the tolling decision because a prisoner has no right to counsel during post-conviction proceedings.").

## RECOMMENDATIONS

The undersigned recommends that the motion [9] to dismiss filed by Respondent Eydie Winkel be granted and that the petition [1] for habeas corpus relief filed by Petitioner Eddie Saucier be dismissed as untimely pursuant to 28 U.S.C. § 2244(d).

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, each party has fourteen (14) days to serve and file written objections to the Report and Recommendation; the objections must be filed with the Clerk of this Court, and must serve them upon the other parties and submit them to the assigned District Judge. Within seven (7) days of service of the objection, the opposing party or parties must either serve and file a

response or notify the District Judge that they do not intent to respond to the objection. An objecting party must specifically identify those findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he did not object.

Signed, this the 29th day of January, 2015.

*s/ John C. Gargiulo*
JOHN C. GARGIULO
UNITED STATES MAGISTRATE JUDGE